******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* AARON WOOD
(AC 36558)

Alvord, Prescott and Pellegrino, Js.

*Argued February 11—officially released September 1, 2015*

(Appeal from Superior Court, judicial district of Hartford, geographical area number fourteen, Suarez, J.)

*Michael Zariphes*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Mark Brodsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Aaron Wood, appeals from the judgment of the trial court revoking his probation and imposing a seventy-five month prison sentence. On appeal, the defendant claims that the court abused its discretion by: (1) denying his request for new counsel[1] and (2) proceeding with the violation of probation hearing without his presence.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. In January, 2009, the defendant was convicted of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant was sentenced to ten years of incarceration, suspended after six months, and ten years of probation. From July, 2010, to April, 2012, the defendant was convicted three times of violating his probation. After each conviction, he was sentenced to prison and later released on probation.

On September 3, 2013, the defendant was again arrested for violating his probation. The state charged that he had violated the conditions of his probation by sleeping at an unapproved residence and testing positive for marijuana. On November 21, 2013, the defendant appeared with counsel before the court for his violation of probation hearing. Before the hearing began, the defendant addressed the court and requested new counsel. The defendant complained of a lack of communication with his assigned public defender, Victoria Pells, and a disagreement over hearing strategy. In addition, the defendant claimed that Pells had lied to her supervisor, telling him that the defendant had threatened her. The court asked Pells if she had prepared the case; she replied that she was prepared and ready to proceed. The defendant continued to protest, prompting the court to again ask Pells if she was prepared. She said, "I have prepared the case, Your Honor. I've talked to [the defendant] about this case on several times when he has been to court. I went out to the jail to see him. I've talked to him over the [tele]phone at jail. The thing he wants me to do is put in an affidavit that I think would be detrimental to his case, and I have chosen not to do so." The court denied the defendant's request for new counsel.

The court stated that the hearing would go forward as scheduled, but the defendant responded: "No." The record shows that the defendant continued to interrupt the court to argue his point. When the court instructed the state to call its first witness, the defendant began singing Christmas carols. At this point, the state asked that the defendant be held in contempt. The court did not rule on the oral motion and instead called a five minute recess.

When the hearing resumed, the defendant repeated

his claim, "I need another attorney." He repeated this phrase twenty times and ensured that the court knew how to spell the word "new." The court explained to the defendant that he could either proceed with his counsel or represent himself with standby counsel, but with either election, his hearing was resuming that day. The defendant said that he wanted an attorney. The court also advised the defendant that if he continued to be disruptive, the hearing would proceed without him. The defendant responded that the court could do what it wanted to do. The court took a fifteen minute recess specifically for the defendant to decide whether he was willing to be nondisruptive and be present for the hearing.

When the hearing resumed, the marshal said that the defendant would not come out of the lockup. On the record, the court stated that the defendant's behavior had been disruptive as defined by Practice Book § 42-47. The court determined that the defendant had waived his right to be present at the hearing. In addition, the court ordered the defendant be removed from the proceedings. The court stated: "He's certainly welcome to be here, and the court has instructed him that he is welcome to be part of this hearing. I'm going to instruct that the defendant be present up in the floor of this courthouse today. He is welcome to join the proceeding at any time that he wishes to do so as long as he is not disruptive to the proceedings." The court then instructed Pells to visit the defendant and inform him that the hearing was going to proceed and that he could attend if he stopped being disruptive. When Pells returned, the court asked her three times if she had informed the defendant of the court's instructions.[3] Each time Pells confirmed that she had done so, and she stated that she had been accompanied by her supervisor. Pells stated that the defendant responded to the information by repeating his request for a new attorney, and that he was unwilling to follow the court's instructions. The court stated the hearing would proceed without the defendant in accordance with Practice Book § 44-8 (3).

With the defendant not present, the violation of probation hearing went forward. Pells began by telling the court that the defendant wanted to testify on his own behalf. The court stated that he could only do so if he followed the court's previous instructions and behaved appropriately.

The state called the defendant's probation officer, who testified that the defendant had admitted to spending nights at unapproved housing in violation of the conditions of his probation. In addition, the probation officer testified that the defendant had admitted to using marijuana and tested positive for drug use. Pells cross-examined the probation officer and raised the possibility that the defendant had left his approved housing

because he was being sexually harassed. She also asked if the positive marijuana test could have been a result of drug use that occurred while the defendant was still in prison.

After the state rested its case, at her request, Pells was granted a short recess to ask the defendant if he wanted to attend the hearing and testify on his own behalf. Pells returned to the hearing and advised the court that the defendant told her he did not wish to testify or be present in court.

The court found that the defendant had violated the terms of his probation. Pells asked the court for leniency. She represented that the defendant had changed homes because he feared for his safety. The court determined that the beneficial aspects of probation were no longer being served. The court revoked the defendant's probation, and imposed the maximum sentence of seventy-five months in prison. This appeal followed.

## I

The defendant's first claim on appeal is that the court improperly denied his request for new counsel. The defendant argues that his right to effective assistance of counsel, under both the federal and state constitutions, was violated when the court denied his request to obtain new counsel.[4] The defendant claims that if the court had conducted a proper investigation, it would have discovered that his counsel was ineffective and burdened by a conflict of interest. We disagree.

"We review the court's refusal to appoint new counsel for an abuse of discretion. [T]here is no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . Moreover, absent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Citation omitted; internal quotation marks omitted.) *State* v. *Turner*, 133 Conn. App. 812, 819–20, 37 A.3d 183, cert. denied, 304 Conn. 929, 42 A.3d 390 (2012).

"The United States Supreme Court first held in *Gagnon* v. *Scarpelli*, [411 U.S. 778, 790, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)], that due process required the appointment of counsel in some probation revocation hearings. The right to counsel in such hearings was extended to all defendants in violation of probation hearings by [General Statutes] § 53a-32 and has been treated by our Supreme Court as a right of constitutional dimension." *State* v. *Flemming*, 116 Conn. App. 469, 478, 976 A.2d 37 (2009). Our Supreme Court has evaluated the right of assistance of counsel in a probation hearing using standards derived from the sixth and fourteenth amendments to the United States constitution. *Gentry* v. *Warden*, 167 Conn. 639, 645, 356 A.2d 902

(1975).

"[An appellate court] must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial. . . . In evaluating whether the trial court abused its discretion in denying [the] defendant's motion for substitution of counsel, [an appellate court] should consider the following factors: [t]he timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." (Citation omitted; internal quotation marks omitted.) *State* v. *Hernaiz*, 140 Conn. App. 848, 854–55, 60 A.3d 331, cert. denied, 308 Conn. 928, 64 A.3d 121 (2013).

Here, the record shows that the defendant's only request for new counsel came just before the start of his probation hearing. At this stage of the proceeding, a court is not required to afford a defendant unlimited options for his choice of counsel. *Foote* v. *Commissioner of Correction*, 151 Conn. App. 559, 567–68, 96 A.3d 587, cert. denied, 314 Conn. 929, 102 A.3d 709 (2014). "Although the court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . the extent of such inquiry lies within the court's sound exercise of discretion. After it has given the defendant an adequate opportunity to inform it of his or her complaints, the court has broad discretion in determining whether circumstances warrant the appointment of new counsel or the dismissal of the defendant's existing counsel." (Internal quotation marks omitted.) Id.

The court allowed the defendant to fully air his complaints.[5] See id., 567–69. There is little doubt the court was well informed as to why he wanted new counsel. The record shows that the defendant claimed Pells had not been helping him on his case, she had not communicated frequently enough, and she had lied to her supervisor, telling him that the defendant had threatened her. Ultimately, the defendant stated, "I don't trust her." Hearing these arguments, the court turned to Pells and twice asked if she was prepared. Pells stated that she was. She informed the court that she had spoken to the defendant several times at court and at the jail. She stated that there was a disagreement over the submission of an affidavit as evidence, and that she decided against submission because she believed it would be detrimental to the defendant's case. We conclude that the court's level of inquiry was adequate.

A court is required to dismiss the defendant's existing counsel only if there are exceptional circumstances; see id., 568; in this case none were present. This court has held exceptional circumstances do not include a defendant's perception of a breakdown in communica-

tion. *State* v. *Turner*, supra, 133 Conn. App. 821–22. On the basis of the statements by the defendant and Pells, it was reasonable for the court to determine that client and counsel had been communicating. The court accepted Pells' statements that she and the client had discussed the case. The fact that there was a disagreement over the introduction of an affidavit was evidence in and of itself that there was ongoing communication between the defendant and Pells. The transcript of the hearing supports this conclusion: Pells relayed the defendant's wish to testify, and raised a claim that the defendant's actions were a result of him being sexually harassed at his approved housing. Pells necessarily would have obtained this explanatory information through communicating with her client.

The court's inquiry also revealed a disagreement over trial strategy. Among his complaints, the defendant told the court that Pells was not helping him prepare for the hearing. Pells said the defendant wanted her to submit an affidavit that she assessed would be detrimental to his case. Against the defendant's wishes, she decided not to submit it. In *State* v. *Drakeford*, 202 Conn. 75, 519 A.2d 1194 (1987), our Supreme Court adopted the position that defense counsel has the final word over most tactical decisions: "Differences of opinion over trial strategy are not unknown, and do not necessarily compel the appointment of new counsel." Id., 83. A disagreement over whether to submit an affidavit is not an exceptional circumstance as to require new counsel. See id. After listening to both the defendant's and counsel's explanations of the issue, the court decided it did not necessitate the removal of Pells.

The defendant also argues that conflict between himself and Pells had risen to the level of "irreconcilable differences." General assertions of distrust or a lack of faith in counsel are not exceptional circumstances. In *State* v. *Jenkins*, 70 Conn. App. 515, 524–25, 800 A.2d 1200, cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002), this court found no exceptional circumstances were present when a defendant felt uncomfortable with his counsel. Here, the defendant's lack of trust in his counsel related to an out-of-court incident that he described to the court. He said Pells had lied to her supervisor, telling the supervisor that the defendant had threatened her. Whatever did occur, Pells did not herself bring the incident to the court's attention, and it did not affect her willingness to proceed with the case. As discussed in *Jenkins*, an exceptional circumstance is more than just the defendant's feeling of dissatisfaction. See id., 524. It must be substantiated with evidence that counsel will do an inadequate job in representing the defendant's interests. See id. There is no evidence that Pells was not prepared to provide the defendant with an adequate defense.

The defendant also argues that the alleged out-of-

court incident created a conflict of interest that required the court to remove Pells from the case. The defendant claims: either Pells lied to her supervisor, exposing herself to professional jeopardy; or she was so threatened she could not "possibly represent her client in a meaningful and zealous way"; or the court's knowledge of the alleged threat created a cloud over the defendant's case. Conflict between a defendant and counsel is not the same as a conflict of interest. In relevant part, "[a] concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." Rules of Professional Conduct 1.7 (a). This court has said: "To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Emphasis in original; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 350, 27 A.3d 404 (2011), aff'd, 312 Conn. 345, 92 A.3d 944 (2014). A defendant's claim of a dispute or ill will between himself and counsel does not meet this standard.

The alleged incident did not create any conflict of interest. It happened outside of court proceedings, and the defendant himself chose to share it with the court. The incident had no relation to the case against the defendant, and neither defense counsel nor the state attempted to raise it during the hearing. Thus, Pells had no personal interest to protect. There was no threat she would be called to testify about the incident, and what she did or did not tell her boss was not conduct worthy of "criminal charges or significant disciplinary actions." *State* v. *Figueroa*, 143 Conn. App. 216, 225, 67 A.3d 308 (2013); cf. id., 228 (defense counsel was accused of facilitating witness intimidation on defendant's behalf). If Pells had truly felt threatened she could have requested to withdraw from the case, but she did not. Instead she told the court that she was prepared to go forward. Pells' performance in the hearing showed no evidence of competing interests between her and the defendant. She informed the court that her client wanted to testify, she cross-examined the state's witness, she raised an affirmative defense to the defendant's unauthorized change in residence, and she questioned whether the positive drug test could have been a result of drug abuse that occurred before probation began. On its face, the defendant's revelations of the alleged threat and lie did not raise the possibility of a conflict of interest. The court was under no obligation to inquire further. See id., 224.

The record demonstrates that the court listened to the defendant's request for new counsel and his reasons why substitution was necessary. The court asked Pells

about the defendant's complaints, and determined she was prepared and capable to represent the defendant. The court found no exceptional circumstances to warrant dismissing defense counsel. Accordingly, the court did not abuse its discretion.

## II

The defendant also claims that the court improperly proceeded with his violation of probation hearing without his presence. First, he argues that he did not waive his right to be present. Second, the defendant says his behavior was wrongly classified as disruptive so he should not have been barred from the proceedings. Finally, he claims that the court did not properly inform him of his right to return to the courtroom because the message was not personally delivered by the court. We disagree with all three claims.

At the start, it is important to clarify the court's ruling concerning the defendant's presence at the hearing. The transcript shows the defendant was warned that if he continued to be disruptive, he would be removed from the hearing and it would proceed without him. The court then took a recess to provide the defendant with time to decide if he was willing to abide by the court's conditions. When court resumed, the defendant refused to return from the lockup. At this point, the court ruled that the defendant had waived his right to be present and ordered his removal from the hearing in accordance with Practice Book § 42-47. The defendant challenges both of the court's rulings.

We use the abuse of discretion standard to review both a court's determination of waiver of the right to be present; *State* v. *Durkin*, 219 Conn. 629, 636, 595 A.2d 826 (1991); and a court's removal of a defendant from the courtroom. *State* v. *Jones*, 281 Conn. 613, 637, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). "Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation." (Internal quotation marks omitted.) *State* v. *Altajir*, 123 Conn. App. 674, 682, 2 A.3d 1024 (2010), aff'd, 303 Conn. 304, 33 A.3d 193 (2012).

## A

The defendant claims that he did not explicitly waive his right to be present when he refused to leave the lockup and return to the courtroom after recess. Instead, he argues that the conflict between him and his attorney was so great that not returning to the courtroom was the only way to protect his right to effective representation. The defendant argues that this behavior should not have been construed as a waiver of his right to be present. This argument is unpersuasive.

Practice Book § 44-8 instructs that a court may find a defendant has waived his right to be present at trial or sentencing. It provides in relevant part: "[I]f the defendant will be represented by counsel at the trial or sentencing hearing, the judicial authority may . . . [d]irect that the trial or a part thereof or the sentencing hearing be conducted in the defendant's absence if the judicial authority determines that the defendant waived the right to be present . . . ." Practice Book § 44-8.

"[A] trial court need not engage in a colloquy with a defendant expressly focused on the defendant's understanding of his right to be present to determine that a waiver of the right of presence was valid. Rather, the court may infer the defendant's waiver from the totality of his acts and conduct, so long as the defendant has been adequately informed that the trial would continue in his absence." (Internal quotation marks omitted.) *State* v. *Crawley*, 138 Conn. App. 124, 132–33, 50 A.3d 349, cert. denied, 307 Conn. 925, 55 A.3d 565 (2012).

The defendant does not disagree that he disrupted the court hearing with multiple repetitive interruptions and the singing of Christmas carols. In fact, he claims it was his goal to force the court to order a continuance. Five separate times, the court told the defendant that the hearing would go forward without him if he did not stop being disruptive. The defendant ignored the warnings by repeating his request for a new attorney, but he did acknowledge the consequences of his actions: "You can do what you want, find me guilty, do whatever you want because I know this whole situation is staged, find me guilty." This statement shows the defendant did understand that the hearing could proceed without him, and he was aware of the consequences of his actions. See *State* v. *Crawley*, supra, 138 Conn. App. 132–33.

In accordance with our rules of practice, the defendant was represented by counsel during his absence from the courtroom. While this was not the counsel he then wanted, we have already held that the court did not abuse its discretion in declining to replace her. The defendant's intentional absence was sufficient basis for the court to infer that he was waiving his right to be present at the hearing. Therefore, we conclude that the court did not abuse its discretion.

B

The defendant also claims the court erred in ordering his removal from the courtroom for disruptive behavior. The defendant argues that his conduct should be seen as an effort to preserve on appeal his request for new counsel, or as a means to secure the continuance he believed he deserved. Both arguments are disingenuous and fail to change the classification of his behavior as disruptive.

"With respect to waiver of the right of confrontation by disruptive conduct, a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings. . . . Finally, the trial court has broad discretion in determining whether the removal of an accused from the courtroom is an appropriate measure in light of the nature and severity of the improper conduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, supra, 281 Conn. 637.

Removal of a disruptive defendant is guided by Practice Book § 42-47. "Upon the direction of the judicial authority, a defendant may be removed from the courtroom during trial or hearing when the defendant's conduct has become so disruptive that the trial or hearing cannot proceed in an orderly manner. The judicial authority shall advise the defendant that the trial or hearing will continue in the defendant's absence. . . ." Practice Book § 42-47.

The defendant has conceded that his conduct was disruptive and that his intent was to delay the proceedings. At the time, the court advised the defendant that the hearing would go forward without him if he did not change his behavior; the defendant indicated that he understood. When the court ordered removal, the defendant had already absented himself from the courtroom. This is inconsequential; the defendant's refusal to return to court was intended, by the defendant's own admission, to disrupt or delay the proceeding. The court explicitly stated it was taking a recess for the defendant to decide if he was willing to behave and remain in the courtroom for his hearing. The court was within its discretion to view the defendant's refusal to return as a continuation of his disruptive behavior. The court's decision to remove the defendant was justified by the totality of his disruptive conduct.

C

In the alternative, the defendant seeks procedural

relief. He claims the court failed to abide by the rules of practice because the court did not personally inform him of his right to return to the hearing. We determine that the defendant was well informed of his options, and that the court complied with all relevant procedures.

The rules of practice require: "At the time of the defendant's removal, the judicial authority shall advise the defendant that the defendant may request to be returned to the courtroom if, at the time of making such request, the defendant assures the judicial authority that the defendant shall not engage in disruptive conduct." Practice Book § 42-47. Nowhere in the text is there a requirement that the defendant be personally informed of his right to return. All that is required is that the defendant be made aware of his right to return. See *State* v. *Drakeford*, supra, 202 Conn. 81; see also *State* v. *Edwards*, 158 Conn. App. 119, 142–44,     A.3d (2015).

The court was well within its discretion to send defense counsel to advise her client of his right to attend the hearing. After ordering removal, the court stated that the defendant was welcome to return to the proceedings if he agreed to be nondisruptive. In order to preserve the defendant's option of returning to the hearing, the court ordered that he remain in the courthouse and instructed Pells to inform him of his right to return. Despite the defendant's dislike of his counsel, Pells was an appropriate person to advise him. She was an officer of the court, and the record provides no evidence why she could not be trusted to complete the task imposed by the judge.

The defendant claims Pells did not advise him of the court's instructions, but he provides no evidence to support his claim. The court took a recess so Pells and her supervisor could visit the defendant. When Pells returned, the court confirmed on the record that she: had met with the defendant, informed him that the hearing would go on without him, and explained that he could return if he remained orderly. Pells stated that the defendant had indicated that he would not be returning to the courtroom. After the state rested, Pells visited the defendant a second time to inquire whether he wanted to attend the hearing and testify; again, he refused. In fact, the defendant concedes that even if he was advised by Pells or in person by the court, he would not have returned because of his desire for new counsel. In circumstances like these, our Supreme Court has found that administrative efficiency would be paralyzed if a defendant could voluntarily absent himself and then demand the court provide personal advisement. See *State* v. *Drakeford*, supra, 202 Conn. 81.

We conclude that the court properly followed the rules of practice and provided the defendant with a fair opportunity to be present at his hearing.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We review the defendant's appeal as a challenge to the court's denial of his request for new counsel. In his appellate brief, the defendant claims that the court erred by "fail[ing] to grant the defendant's request to continue the [violation of probation] hearing in order to appoint him conflict free counsel," but the record shows that the defendant never requested a continuance of the hearing. As revealed by the record, he only stated that he refused to proceed with the hearing if his appointed counsel was not replaced. The defendant repeatedly requested new counsel. The defendant's claim that the court erred in denying his motion for continuance is based on his request for new counsel, and his brief adequately addresses this issue for review.

[2] The state concedes that the defendant's claims were preserved for review. The record shows that the defendant personally objected to the denial of new counsel and that the hearing proceeded without him.

[3] "The Court: Attorney Pells, did you instruct your client that he's welcome to join this proceeding at any time that he wishes to as long as he—his behavior is not disruptive to this proceeding?

"[Defense Counsel]: I did, your honor. Myself and my supervisor, Attorney Cococcia, went in the interview room off of center court and let him know that the proceeding is going forward today regardless of whether or not he's present in court, he can choose to be present in court at any time as long as he obeys the rules of the court. He continued to say that he wants a new lawyer, that he doesn't trust me. My supervisor has spoken to him about that, that he is not going to be getting a new lawyer. He continued to say that I made up lies about him today, which I did not. If he—he and I very well could have different versions of the conversation we had this morning, but I did not lie to my supervisor about anything that had went on.

"The Court: Well, the court's assured that you're an officer of the court in good standing, and the court does not question at all any of your statements made to the court whether in chambers or outside of—or in the courtroom. The court is satisfied that you are an attorney in good standing and capable. So that is not an issue for the court, or for this proceeding for the matter, or the public defenders' office in general. Does your client wish to be part of this proceeding today?

"[Defense Counsel]: I'm sure he would love to be out here, however, he did not seem to be willing to follow your honor's orders to remain silent as to the fact—as to his desire to have a new lawyer.

"The Court: All right. Well, pursuant to [Practice Book] § 44-8 (3), the court directs that this matter should continue in his absence based on his disruptive conduct that the court has previously indicated on the record pursuant to [Practice Book] § 42-46 or -47. So at this point, as long—counsel, as long as you have instructed your client that he's welcome to join us at any time—

"[Defense Counsel]: I did, your honor.

"The Court: —then we will proceed until he wants to join us."

[4] The defendant has not separately briefed any of his state constitutional claims. "Because the defendant has not briefed his claims separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Hurdle*, 85 Conn. App. 128, 133 n.1, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004).

[5] The defendant relentlessly interrupted the court to repeat his request for a new attorney. The court acknowledged the defendant's request: "Okay. All right. Sir, that's fine. We've been scheduled for a hearing today. This case has been scheduled for some period of time. I understand what you are saying. The case is scheduled for today. All right?"